# EXHIBIT 1

AGREEMENT AND WORKING RULES

BETWEEN

## BROADWAY ELECTRICAL SUPPLY

AND

## LOCAL UNION 1922

## INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS

## AFL-CIO

August 1, 2014-July 31, 2017

**THIS AGREEMENT** made and entered this 1st day of August 2014, between Broadway Electrical Supply (hereinafter referred to as the "Company") as well as all branch locations operated by the Employer) its successors and assigns and Local Union 1922 of the International Brotherhood of Electrical Workers, AFL-CIO, 1065 Old Country Road, Suite 202, Westbury, NY 11590, its successors or assigns (hereinafter referred to as the "Union").

## WHEREAS:

The parties have carried on collective bargaining negotiations for the purpose of developing a general agreement on wages, hours of work and other conditions of employment.

**NOW, THEREFORE,** in consideration of the mutual agreements herein contained the parties hereto agree with each other with respect to the employees of the Company recognized as being represented by the Union as follows:

## ARTICLE I - RECOGNITION

Section 1 - The Company hereby recognizes the Union as the exclusive representative of all **inside counter sales** employees, excluding guards, supervisors, outside salesmen, office workers, officers and partners of each establishment and one (1) confidential employee. The term "employee" shall refer only to workers covered by this Agreement.

Section 2 - The Company hereby agrees not to discriminate against any employee in any manner whatsoever because of membership in or activity on behalf of the Union or because of race, religion, age, or sex.

## ARTICLE II - UNION SECURITY

Section 1 - It shall be a condition of employment that all employees covered by this Agreement who are members of the Union on the execution date of this Agreement shall remain as such. All employees who are not members on the execution date hereof shall, as a condition of employment, become and remain members of the Union on the thirty-first (31st) day following the beginning of their employment, or the effective date or execution date of this Agreement, whichever is later.

Section 2 - The Company shall immediately discharge any employee after receipt of written notice from the Union that said employee, pursuant to the terms of Section 1 of this Article, has failed to tender the periodical dues and initiation fees uniformly required as a condition of acquiring or retaining membership in the Union.

## ARTICLE III- CHECKOFF

<u>Section 1</u> - Upon receipt of a voluntary written authorization, the Company agrees to deduct and forward monthly to the Local Union, the Union Membership dues and any additional dues from the pay of each IBEW member and/or initiation fees from said employees wages on the 1st pay day of every month and remit same to the Union no later than the 10th day of the month in which they are deducted.

<u>Section 2</u> - The Company shall notify the Union immediately upon receipt of any revocation of any authorization submitted to it pursuant to this Article.

## ARTICLE IV - SHOP STEWARD

<u>Section 1</u> - The Company recognizes the right of the Union to designate a Shop Steward who shall be recognized as the representative of the Union for all matters arising under this Agreement to the extent permitted herein. The Union shall advise the Company as to the identity of the Steward and the Company agrees that the Steward shall be free to conduct his/her duty as such, with the understanding that such duty will not unduly interfere with normal production or the conduct of the business and the Steward shall be expected to do his/her usual work. However, reasonable time spent in carrying out the grievance procedure, agreed upon herein, will be considered as being on the Company's time.

<u>Section 2</u> - The Shop Steward shall be accorded super seniority and shall be the last person laid-off and the first one rehired upon resumption of work.

## ARTICLE V - UNION VISITATION

<u>Section 1</u> - Non-employee representatives of the Union shall be permitted to visit the establishment for a reasonable period of time for the purpose of consulting with the Company and the Shop Steward without interfering with the conduct of the business.

## ARTICLE VI - SAFETY AND HEALTH

<u>Section 1</u> - The Company shall keep its premises in accordance with the rules and regulations of the New York State Department of Labor, protect and service the machinery in order to avoid hazard to life and limb, equip its premises with a medicine chest and medical supplies for use in emergency cases, and carry insurance provided by the Workman's Compensation Law of the State of New York.

## ARTICLE VII - BULLETIN BOARDS

<u>Section 1</u> - The Company shall furnish a bulletin board for Union news.

## ARTICLE VIII - LEAVE OF ABSENCE

Section 1 - A reasonable leave of absence shall be given to employees without pay for any of the following reasons:

a) Personal illness
b) Military duty
c) Union activity
d) Mutual consent of the parties in writing

## ARTICLE IX - DISCHARGE

Section 1 - The Company shall have the right to discharge any employee for insubordination, inefficiency or for just cause. The Company shall notify the Union in writing stating the reasons for affecting such discharge.

Section 2 - If the Union feels the discharge is unjust, the case shall be adjudicated, under the Grievance Procedure of this Agreement.

## ARTICLE X - WORK RULES

Section 1 - Non-members of the bargaining unit shall not do any work normally done by members of the Union in order to circumvent the employment of a Union member except in cases of emergency or in the case of a non-member who has previously been exempt under this provision.

## ARTICLE XI - MODIFICATION

Section 1 - Neither the Company, any employee or group of employees shall have the right to waive or modify any provision of this Agreement without the written authorization of the Union.

## ARTICLE XII - SEPARABILITY

Section 1 - Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provision shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall thereupon seek to negotiate substitute provisions which are in conformity with the applicable laws.

4

## ARTICLE XIII - STRIKES & LOCKOUTS

**Section 1** - There shall be no strikes or lockouts during the term of this Agreement (subject to the exception in Articles XXII and XXIII).

**Section 2** - The employees shall have the right to refuse to cross any picket line established by a trade union.

**Section 3** - It is recognized and agreed that, while the Company will further the sale of the Union made material, so as not to be at a disadvantage with those firms not unionized he shall be permitted to stock and handle such other materials as his needs require.

## ARTICLE XIV - GRIEVANCE PROCEDURE

**Section 1** - All complaints, disputes or questions as to the interpretation, application or performance of this Agreement shall be adjusted by direct negotiations between the Union and the Company or their representatives. Should any dispute or difference arise, the parties shall endeavor to settle these in the most direct manner. The procedure shall be as follows (unless step or steps thereof are waived, combined or extended by mutual consent):

- **STEPS 1** - The grievance shall be submitted to the aggrieved employee's Shop Foreman by the employee's Shop Steward no later than ten (10) days after the occurrence. If the Steward and the Shop Foreman fail to settle the grievance within three (3) days (exclusive of Saturday, Sunday or Holiday) it may be submitted to step 2.
- **STEP 2** - The grievance shall then be referred to the Business Manager of the Union or his designated representative and the Company or their authorized representative. If no settlement is reached within five (5) days (exclusive of Saturday, Sunday or Holiday) the grievance may be submitted to arbitration as set forth in Step 3.
- **STEP 3** - If the dispute or difference is not settled in the second step above, either party may request that the matter be referred to arbitration, if this request is made within ten (10) days after the reply was given in the second step.

- Arbitration Board shall consist of one (1) member to be designated by the New York State Employment Relations Board. The decision of the Arbitration Board shall be final and binding. The parties shall jointly pay the cost of the Arbitrator's services.

## ARTICLE XV - PROBATIONARY PERIOD

Section 1 - The probationary period shall be thirty (30) days from the date of employment as a new employee. During this period said probationary employee may be terminated for any reason without recourse by the Union.

Section 2 - The probationary period may be extended for a similar period by mutual agreement of the parties.

Section 3 - Temporary employees hired for a period not exceeding ninety (90) days before Christmas and during summer vacations shall be deemed probationary employees and shall not accumulate seniority. In the event such employee is retained beyond ninety (90) days, he shall then be considered a regular employee with full seniority from date of hire and the Company shall pay retroactively all benefits, including Pension and Welfare.

## ARTICLE XVI - SENIORITY

Section 1 - Seniority shall be defined as the length of service with the employees individual Employer.

Section 2 - a) In the event of a layoff the least senior employee shall be the first one laid off, and in the event of recall, the most senior employee shall be the first one recalled.

b) It is the desire of the Company and the Union to upgrade regular employees wherever possible. Therefore, when job opportunities occur which are higher rated than jobs of regular employees, due consideration shall be given to regular employees for such promotion, based upon their seniority, prior to hiring new employees, provided that the regular employee seeking the higher rated job shall have the ability to properly perform the job.

Section 3 - Section 1 and 2 of this Article are subject to the requirements of efficiency of operations, which requirements are recognized as paramount.

Section 4 - Seniority shall not apply to:

(a) An employee who voluntarily quits.

(b) An employee unemployed for twelve (12) months

6

(c) An employee discharged for just cause.

(d) An employee who, being notified to report to work, does not do so within forty eight (48) hours (exclusive of Saturday, Sunday or Holiday) or fails to give a satisfactory reason for his failure to report.

Section 5 - The Company shall submit a current and up to date seniority list to the Union whenever requested.

## ARTICLE XVII - HOURS AND OVERTIME

Section 1 - The regular workweek shall consist of five (5) eight (8) hour days, Monday through Friday inclusive, subject to section 7 hereinbelow.

Section 2 - The hours of daily employment must be consecutive except for a lunch period of one (1) hour, arranged so that the operations of the establishment are not inconvenienced.

Section 3 - Employees reporting for work at the direction of the Company shall be paid a full day's pay regardless of whether work is available for them or not.

Section 4 - Should any employee work more than forty (40) hours in any one week, he/she shall be paid for such overtime at the rate of time and one-half. Employees who work on Saturday as a sixth day of work shall be guaranteed a minimum of four (4) hours of work.

Section 5 - Any employee shall not be required to take time off in lieu of overtime previously worked.

Section 6 - Overtime shall be distributed on an equal basis among employees normally assigned to the performance of the work in which the overtime is required, provided the requirements of efficiency of operations are recognized as paramount.

Section 7 - The Company shall be entitled to schedule employees to work on Saturday and/or Sunday as part of their normal workweek on the following basis:

a) By first asking for volunteers; or

b) If there are not enough volunteers, by requiring employees to work based on inverse order of seniority on a weekly rotating basis, provided they can perform the required work.

7

In the event an employee is scheduled to work Saturday and/or Sunday as part of his regular forty (40) hour work week, he shall be assigned alternative days off during the week.

## ARTICLE XVIII - REST PERIODS

Section 1 - All employees shall be allowed at least two (2) ten (10) minute rest periods per working day, divided between the first four (4) hours of working time and between the next four (4) hours of working time.

## ARTICLE XIX - HOLIDAYS

Section 1 - The Company agrees to pay the employees full salary (as provided for in section 2 hereinbelow) for the following holidays as if they worked thereon.

NEW YEAR'S DAY                          LABOR DAY
WASHINGTON'S BIRTHDAY                    THANKSGIVING DAY
MEMORIAL DAY                             CHRISTMAS DAY
INDEPENDENCE DAY                         EMPLOYEE'S OWN
                                         BIRTHDAY

Two (2) Floating Holiday to be agreed upon by both the Company and the employees.

Section 2 - The compensation for holidays shall be based upon the employee's straight time hourly rate for eight (8) hours. Part-time employees shall receive Holiday pay on a pro-rata basis.

Section 3 - No employee shall be required to work on a holiday. In the event that an employee does work on a holiday, he shall be paid at time and one-half in addition to his regular day's pay for the holiday.

Section 4 - In order to receive pay for the above mentioned holidays all employees with five (5) years or less of service must work the scheduled day before and the scheduled day after the holiday.

## ARTICLE XX - VACATIONS

Section 1 - Should a holiday occur during the vacation period of any employee, said employee shall be entitled to one (1) additional day of vacation in lieu of payment for the said holiday.

Section 2A - All employees shall receive vacation with pay in accordance with the following schedule:

| LENGTH OF SERVICE | VACATION |
|---|---|
| One (1) year | Two (2) weeks |
| Ten (10) years | Three (3) weeks |

Section 2B - After one (1) year of employment, an employee's vacation shall be calculated from the date of hire.

Section 3 - Any employee who is laid off shall receive whatever vacation pay he was eligible to receive.

Section 4 - Employees laid off, retired or who quit and give two (2) weeks notice in advance, shall receive pro-rata vacation computed since their preceding vacation.

Section 5 - All full time employees shall receive forty (40) hours pay at regular time for each week of vacation due.

All employees with one (1) year of continuous employment shall receive their total weekly earnings, including overtime, as vacation time for each week of vacation due.

Part time employees shall receive a pro-rata vacation.

Section 6 - Vacation time shall be scheduled subject to the mutual agreement of the Company and the individual employee.

Section 7 – The Employer agrees to pay each employee for any unused vacation time at the end of each year.

## ARTICLE XXI - SICK LEAVE - JURY DUTY - BEREAVEMENT PAY

Section 1 - Paid sick leave shall be given to each employee each year as follows, sick leave pay to be based on the employee's straight time hourly rate for eight (8) hours and pro-rated for part timers:

| LENGTH OF SERVICE | DAYS OF LEAVE |
|---|---|
| After one year of employment | Seven (7) days |

Section 2 - Such leave, unused in any year, shall be paid for in cash at the rate of his regularly scheduled day's pay for each day not taken during the previous year.

9

Section 3 - Employees retiring or being laid off and part time employees shall receive pro-rata sick leave.

Section 4 - Regular employees who are assigned to Jury Duty and serve thereon, shall receive the difference between their regular base pay (40 hours if full time, or regular scheduled hours if part time) and jury duty pay, up to a maximum of two (2) weeks pay.

Section 5 - In the event of a death in the immediate family of an employee (parent, spouse, child, brother or sister), such employee shall be granted three (3) days' leave without loss of pay, for funeral attendance and mourning; one (1) days' leave without loss of pay in the event of a death of an employee's current mother -or- father-in-law. Part time employees shall receive such benefits on a pro-rata basis. The Company may require a death certificate as proof of death.

## ARTICLE XXII - HEALTH

**The Company's contribution rates per each eligible employee shall be as follows:**

Section 1 - Effective **August 1, 2014**, the Company shall contribute to the United Employees Health Plans **nine hundred and seventy-five dollars ($975.00)** per month for each full time employee, working thirty (30) hours and over each week, appearing on its payroll on the first (1st) day of each month, after no more than ninety (90) days employment, for the purpose of providing health benefits for the employees and their dependents.

Section 2 - Effective **August 1st** in each of the years **2015 and 2016**, the Company agrees to pay any health contribution increase deemed necessary by the Fund Trustees up to a maximum of fifteen (15%) per-cent in order to continue to provide the aforementioned health benefits for their employees and their dependents. In the event the increase exceeds 15% in either of the aforementioned two (2) years, the contract will be reopened for negotiations over health and wages only.

Section 3 – Employees hired on or before June 1, 2006 will make the following co-pays toward the cost of their health insurance, it being understood that the Company's contribution rates as listed above will be reduced by the employee's co-pay amount.

Effective June 1, 2006 – 10% employee co-pay
Effective January 1, 2007 – 11% employee co-pay
Effective January 1, 2008 – 12% employee co-pay

Employees hired after June 1, 2006 will make a 15% co-payment towards the cost of their health insurance. Said co-payment will take effect as soon as the Company is obligated to make contributions on their behalf.

The above mentioned co-payments will be deducted from each employee's wages as applicable.

Section 4 - Temporary employees (Article XV, Section 3) shall not be covered for health benefits and the Company shall not be required to pay for such employees.

Section 5 - The Company shall continue to make health contributions for any employee that is out sick up to a maximum of three (3) months.

Section 6 - Payment, pursuant to this Article, shall be made to the United Employees Health Plans no later than the tenth (10th) day of each month, together with a list of employees on whose account the payment is made. If payment is not received by the 10th day of the month, the Union is empowered to institute any action, including strike action, to enforce the terms of this Article. The payroll records or other pertinent data upon which such payments are made shall be open for inspection by the Fund upon demand.

Section 7 - The Trustees of the United Employees Health Plans have entered into an Agreement with the Union that for the purpose of administering the above Trust, the Union shall be considered an Employer for the purpose of contributing to the Trust Fund on behalf of all employees of the Union.

Section 8 - It is hereby agreed that the Union, and the United Employees Health Plans will contribute to the Plan on behalf of their respective employees, provided, however that the Union and the Plan will not participate in the selection of employer Trustees of the Plan.

## ARTICLE XXIII - PENSION PLAN

Section 1 - The Company shall contribute, for all employees covered by this Agreement, who have completed three (3) months employment, three percent (3%) of the gross monthly earnings per week per employee, to the Local 1922 Pension Fund.

Section 1 a) - Temporary Employees (Article XV, Section 3) shall not be covered by the Pension Plan and the Company shall not be required to pay for such employees.

Section 2 - Payment, pursuant to this Article, shall be made to the Local 1922 Pension Fund no later than the 10th day of the following the month being reported, together with a list of employees on whose account the payment is made. The list shall include the employee's hourly rate, number of hours worked and monthly gross earnings. If payment is not received by the 10th of the month, the Union is empowered to institute any action, including strike action, to enforce the terms of this Article. Such list shall include hiring date or termination date of any employee hired or terminated during the month covered by the report. The payroll records or other pertinent data upon which such payments are made shall be open for inspection by the Fund upon demand.

Section 3 - The Trustees of the Local 1922 Pension Fund have entered into an agreement with the Union that for the purpose of administering the above Trust the Union shall be considered an Employer for the purpose of contributing to the Trust Fund on behalf of all employees of the Union.

Section 4 - It is hereby agreed that the Union and the Local 1922 Pension Fund will contribute to the Local 1922 Pension Fund on behalf of their respective employees, provided, however that the Union and the Local 1922 Pension Fund will not participate in the selection of employer Trustees of the Local 1922 Pension Fund.

## ARTICLE XXIV - WAGES

Section 1 - The wage rates to be paid by the Company during the term of this Agreement shall be set forth in Schedule "A" attached hereto and made a part hereof.

## ARTICLE XXV - SEVERANCE PAY

Section 1 - Employees who are laid off, or who retire, shall be entitled to severance pay according to the following schedule:

| LENGTH OF SERVICE | SEVERANCE PAY |
|---|---|
| Five (5) years | One (1) week |
| Ten (10) years | Two (2) weeks |
| Twenty (20) years | Three (3) weeks |

## ARTICLE XXVI - MANAGEMENT RIGHTS

Except as otherwise provided in this Agreement, the Company retains all the rights and functions of management that it has by law.

Without limiting the generality of the above statement, these rights include:

(a) Direction and arrangement of working forces, including the right to hire, suspend, discharge for just cause, transfer, relieve employees from duty because of lack of work or other legitimate reasons.

(b) The determination of products to be sold or services to be rendered.

(c) The location of the business including establishment of new units, and the relocation of and closing of old units.

(d) The determination of financial policies including accounting procedures, as well as the prices of goods and customer relations.

12

(e) The determination of the management organization of each distributing unit, and the selection of employees for promotion to supervisory and other managerial positions.

(f) The maintenance of discipline and control and use of plant property.

(g) The right to enforce company rules and regulations now in effect and which it may issue from time to time, subject to grievance procedure.

It is further agreed that the above detailed enumerations of management rights shall in no way be deemed to exclude any other management prerogatives that may not have been specifically enumerated.

## ARTICLE XXVII - DRUG TESTING

Section 1 - The Company, at its option, shall have the right to institute a drug testing program substantially similar to the one in effect at Schwing Electrical Supply Co. at contract negotiations, which program is accepted by the Union. Any Company instituting such a drug-testing program shall give the Union and its employees two (2) weeks advance notice of the implementation and specific requirements of said program.

## ARTICLE XXVIII – SUCCESSORS & ASSIGNS

Section 1 – This Agreement shall be binding upon the successors and assigns of the parties hereto, and no provisions, terms, or obligations herein contained shall be affected, modified, altered, or changed in any respect whatsoever by the consolidation, merger, sale, transfer, or assignment of either party hereto or affected, modified, altered or changed in any respect whatsoever by any change of any kind in the legal status, ownership, or management of either party hereto.  It shall be the obligation of the employer to require any successor or assign to provide the Union with a written acknowledgment recognizing the union as the continuing bargaining representative hereunder and expressly adopting this collective bargaining agreement. The requirement for such an acknowledgment shall be made a part of any agreement between the Employer and any successor and assign.

1. The wage rates shall be:

## SCHEDULE "A"

### Effective August 2014

|  | **HIRING** | **AFTER 30 DAYS** |
|---|---|---|
| **Inside Counter Sales** | $9.00 | $9.10 |

### Effective August 1, 2015

|  | **HIRING** | **AFTER 30 DAYS** |
|---|---|---|
| **Inside Counter Sales** | $9.40 | $9.50 |

### Effective August 1, 2016

|  | **HIRING** | **AFTER 30 DAYS** |
|---|---|---|
| **Inside Counter Sales** | $9.80 | $9.90 |

Employees hired above the minimum rate shall receive a ten (10) cents per hour increase after thirty (30) days of employment.

2. Effective **August 1, 2014**, employees who have completed their trial period shall receive a forty ($0.40) cents per hour wage increase.

3. Effective **August 1, 2015**, employees who have completed their trial period shall receive a forty ($0.40) cents per hour wage increase.

4. Effective **August 1, 2016**, employees who have completed their trial period shall receive a forty ($0.40) cents per hour wage increase.

## TRAVEL ALLOWANCE

All employees, after completion of their probationary period shall receive fifteen ($15.00) dollars per month.

15

## ARTICLE XXIX - TERM

Section 1 - This Agreement shall become effective as of **August 1, 2014** and shall continue thereafter for a period of three (3) years, until and including **July 31, 2017** and shall continue thereafter for a similar period of one (1) year unless either party shall give the other notice of intention to terminate or modify this Agreement by written notice not less than sixty (60) days prior to such expiration date.

LOCAL 1922, I.B.E.W.

BROADWAY ELECTRICAL SUPPLY

14