**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
LOCAL 1922 PENSION FUND and
UNITED EMPLOYEES HEALTH PLAN,

<table>
<tr><td style="text-align:center">Plaintiffs,</td><td style="text-align:center"><b>REPORT AND<br>RECOMMENDATION</b></td></tr>
<tr><td style="text-align:center">- against -</td><td style="text-align:center">CV 19-2344 (JS) (AKT)</td></tr>
</table>

BROADWAY ELECTRIC SUPPLY, CO., INC.,
and KEITH RAY

Defendants.
------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.   PRELIMINARY STATEMENT

Local 1922 Pension Fund (the "Pension Fund") and United Employees Health Plan (the "Health Fund") (collectively, the "Plaintiffs") commenced this action against Defendants Broadway Electric Supply, Co., Inc. ("Broadway Electric") and Keith Ray ("Ray") (collectively, the "Defendants"), pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* and the governing Collective Bargaining Agreement ("CBA"). Plaintiffs seek to recover unpaid benefits contributions, withdrawal liability, liquidated damages, interest, and attorneys' fees and costs. *See generally* Complaint ("Compl.") [DE 1]. After Defendants failed to answer the Complaint, the Clerk of the Court noted their default in the record on June 17, 2019, pursuant to Federal Rule of Civil Procedure 55(a). *See* DE 10. Plaintiffs then filed the instant motion for entry of default judgment. *See* DE 11.

Judge Seybert referred the motion for default judgment to this Court for a Report and Recommendation as to whether the default judgment should be granted, and, if necessary, to determine the appropriate amount of damages, costs and/or fees to be awarded. *See* October 8, 2019 Electronic Order. Based upon the information submitted by Plaintiffs and for the reasons

set forth below, the Court respectfully recommends to Judge Seybert that Plaintiffs' motion be GRANTED, in part, and DENIED, in part, to the extent set forth in this Report and Recommendation.

## II.   BACKGROUND

### A.   Factual Background

The following facts are taken from the Complaint and are assumed to be true for purposes of this motion.  Defendant Broadway Electric is a domestic corporation organized under the laws of the State of New York with its principal office located at 258 Broadway Electric, Huntington Station, NY 111746.  Compl. ¶ 3.   Broadway Electric is an "employer" within the meaning of Section 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) and 1145.  *Id.* ¶ 4.  Defendant Ray is the sole shareholder and operator of Broadway Electric and resides at 49 Woodhull Place, Northport, New York 11746.  *Id.* ¶ 5.  The Pension Fund is an employee pension benefit plan within the meaning of Section 3(2), (3) of ERISA, 29 U.S.C. § 1002(2), (3) and a "defined benefit plan" within the meaning of Section 3(35) of ERISA, 29 U.S.C. § 1002(35).  It is also a "multiemployer plan" within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1003(37)(A).  *Id.* ¶¶ 6-7.  The Pension Fund was created pursuant to Section 302(c) of the Labor-Management Relations Act ("LMRA") by means of a written agreement and declaration of trust (the "Pension Fund Trust Agreement").  *Id.* ¶¶ 7, 9.  Its principal office is located at 1065 Old Country Road, Westbury, New York 11590.  *Id.* ¶ 8.  The Health Fund is an employer welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and a multiemployer plan within the meaning of 29 U.S.C. § 1003(37)(a).  *Id.* ¶¶ 18-19.  The Health Fund was created pursuant to Section 302(c) of the LMRA and a written agreement and declaration of trust (the "Health Fund Trust Agreement") and provides medical insurance benefits to participants and beneficiaries.  *Id.*

¶¶ 19, 21-22. Broadway Electric is required to make contributions to the Health Fund pursuant to the CBA. *Id.* ¶ 22. The Health Fund's principal office is located at 1065 Old Country Road, Suite 202, Westbury, New York. *Id.* ¶ 20.

The Pension Fund provides its participants and beneficiaries with a defined benefit pension plan and Broadway Electric is required to make monthly contributions to the Pension Fund under the CBA between Broadway Electric and the Local 1922 IBEW (the "Union"). *See id.* ¶¶ 9-11. Plaintiffs allege that Broadway Electric failed to pay the Pension Fund the appropriate contributions from June 2016 through January 2017 in the amount of $1,766.40 in accordance with 29 U.S.C. § 1145. *Id.* ¶ 11. During this same time period, June 2016 through January 2017, Plaintiffs allege that Broadway Electric failed make contributions to the Health Fund in the amount of $8,859.34 in accordance with 29 U.S.C. § 1145. *Id.* ¶ 23. Plaintiffs further allege that Broadway Electric "withdrew from the Pension Fund in a complete withdrawal by permanently ceasing all operations under the Pension Fund on or about February 2017, within the meaning of ERISA §[§] 4201(a) and 4203(a)(1) or (2), 29 U.S.C. §[§] 1381(a) and 1383(a)(1) or (2)." *Id.* ¶ 12. As a result of this "complete withdrawal," Plaintiffs allege that Broadway Electric is obligated to pay withdrawal liability to the Pension Fund in the amount of $18,299.00 pursuant to Section 4211(c)(4)(A) of ERISA, 29 U.S.C. § 1391(c)(4)(A). *See id.* ¶¶ 12, 13.

The Pension Fund offered Broadway Electric the opportunity to make quarterly payments in December, March, June, and September of each year, beginning on December 1, 2018, in the amount of $621.00, with a final payment due March 1, 2022 in the amount of $564.00. *Id.* ¶ 14. In accordance with its statutory obligations as set forth in Section 4219 of ERISA, 29 U.S.C. § 1399(b), on November 19, 2018 the Pension Fund sent a demand letter for withdrawal liability

3

to Broadway Electric.  *Id.* ¶ 15.  The demand letter advised that if Broadway Electric did not make a payment within 60 days after the first quarterly payment was due, "then [the] amount owed would be in default and the entire amount of withdrawal liability, plus accrued interest on the total outstanding liability, from the due date of the first payment that was not timely made, would become due."  *Id.*  In addition, the demand letter advised Broadway Electric that pursuant to the Pension Fund Trust Agreement, the trustees may declare default when notice is received of any circumstances indicating a likelihood that further payments will not be timely made.  *Id.*  On January 2, 2019, a second demand letter was sent to Broadway Electric regarding withdrawal liability which also included a demand for the unpaid contributions to the Health and Pension Funds.  *Id.* ¶ 17.

    **B.    Procedural Background**

    The Complaint was filed on April 22, 2019.  The next day, April 23, 2019, summonses were issued to Defendants Broadway Electric and Ray.  *See* DE 5, 6.  Defendant Ray was personally served at 49 Woodhull Place, Northport, New York on May 9, 2019.  DE 7.  An agent of Defendant Broadway Electric, Amy Lesch, was served on May 13, 2019.  DE 8.  Ray and Broadway Electric's deadlines to answer the Complaint were May 30, 2019 and June 3, 2019 respectively.  *See* DE 7, 8.  Plaintiffs requested certificates of default for both Defendants due to their failures to respond or otherwise move with respect to the Complaint [DE 9] and the Clerk of the Court noted the defaults in the record on June 17, 2019 [DE 10].

    On June 21, 2019, Plaintiffs moved for entry of default judgment.  *See* Motion for Default Judgment ("Mot. Default J.") [DE 11].  In support of their motion, Plaintiffs submitted the Affirmation of Sheri Preece, Esq. in Support of Motion for Default Judgment ("Preece Aff. I") [DE 11-1], a Statement of Damages [DE 11-2], a proposed default judgment [DE 11-3],

4

and an affirmation of service upon Broadway Electric and Ray [DE 11-4].  On December 30,

2019, the Court entered an Order requesting the following additional information from Plaintiffs:

1. Copy of the Collective Bargaining Agreement between Local 1922 and Broadway Electric Electric Supply Co. in effect for the period covering June 2016 through January 2017.

2. The Trust Agreement or whatever document shows the applicable interest rate on delinquent contributions for the period at issue.

3. The Collective Bargaining Agreement or Trust Agreement provisions which show entitlement to liquidated damages on both delinquent contributions and withdrawal liability.

4. Copy of the audit performed which shows the total amount of unpaid contributions and withdrawal liability as calculated by the auditors.

5. Contemporaneous time and billing records to support counsel's request for an award of attorneys' fees.

6. Documentation evidencing the costs Plaintiffs' counsel seeks to recover.

7. Affidavit or declaration setting forth the qualifications of the attorneys who have worked on this case.

*See* December 30, 2019 Order [DE 13] at 2-3.  Plaintiffs submitted additional documentation on

January 14, 2020.  DE 15.  These additional documents consist of the CBA [DE 15-1], Minutes

of the April 9, 2019 Trustees meeting [DE 15-2], Agreement and Declaration of Trust for United

Employees Health Plan (the "Health Plan Trust Agreement") [DE 15-3], Agreement and

Declaration of Trust for Local 1922 Pension Fund (the "Pension Fund Trust Agreement")

[DE 15-4], calculations of the contributions owed and withdrawal liability [DE 15-5], McCarthy

and Preece PLLC billing records ("Contemporaneous Billing Records") [DE 15-6], Direct

Process Serve LLP invoices [DE 15-7], and the affirmation of Plaintiffs' counsel in support of

attorney's fees (" Preece Aff. II") [DE 15-8].

### III.   LEGAL STANDARDS

#### A.   Standard of Review

Fed. R. Civ. P. 55 establishes a two-step process for obtaining a judgment against a defaulting party. *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d Cir. 2011); *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). First, a plaintiff must obtain a notation of default indicating that a party has "failed to plead or otherwise defend." Fed. R. Civ. 55(a). Second, upon obtaining a notation of default, "a plaintiff must next seek a judgment by default under Rule 55(b)." *New York v. Green*, 420 F.3d at 104. The decision to grant a motion for default judgment is left to the sound discretion of the district court. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 88 (2d Cir. 2009)) ("Rule 55(b) commits this decision to the sound discretion of the district court.").

"Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability." *Philip Morris USA Inc. v. 5 Bros. Grocery Corp.*, No. 13-2451, 2014 WL 3887515, at *2 (E.D.N.Y. Aug. 5, 2014) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y.1992)); *Krevat v. Burgers to Go, Inc.*, No. 13-6258, 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014) (citing *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007)) ("A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true."). A default judgment entered on the well-pleaded allegations in the complaint establishes a

6

defendant's liability.  *See Deckers Outdoor Corp. v. TKM Forest Hills, LLC*, No. 12-5986, 2014

WL 4536715, at *4 (E.D.N.Y. Sept. 11, 2014) (citing *Greyhound ExhibitGroup. Inc.*, 973 F.2d at

158).

However, "just because a party is in default, the plaintiff is not entitled to a default

judgment as a matter of right."  *Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC*, No. 13-4358,

2014 WL 2169769, at *3 (E.D.N.Y. May 23, 2014) (quoting *Mktg. Devs., Ltd. v. Genesis Imp. &*

*Exp., Inc.*, No. 08-3168, 2009 WL 4929419, at *6 (E.D.N.Y. Oct. 6, 2009)) (internal quotation

marks omitted), *report and recommendation adopted by* 2014 WL 2765793 (E.D.N.Y. Jun. 18,

2014)); *Bravado Int'l Grp. Merchandising Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186

(E.D.N.Y. 2009) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162

(S.D.N.Y. 1993)).  Rather, "it remains the plaintiff's burden to demonstrate that those

uncontroverted allegations, without more, establish the defendant's liability on each asserted

cause of action."  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012)

(collecting cases); *see Said v. SBS Elecs., Inc.*, No. 08-3067, 2010 WL 1265186, at *2 (E.D.N.Y.

Feb. 24, 2010) (The fact that a complaint remains unanswered will not suffice to establish

liability on the plaintiff's claims since "a default does not establish conclusory allegations, nor

does it excuse any defects in the plaintiff's pleading."), *adopted as modified on unrelated*

*grounds*, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010 ).

"As the Second Circuit has noted, when determining whether to grant a default judgment,

the Court is guided by the same factors which apply to a motion to set aside entry of a default."

*Krevat*, 2014 WL 4638844, at *5 (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-

71 (2d Cir. 2001); *Enron Oil Corp.*, 10 F.3d at 96). "These factors are: (1) 'whether the

defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's

claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Id.* (quoting *Tr. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. Flooring Experts, Inc.*, No. 12-6317, 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted by* 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013)); *see, e.g.*, *Reliance Commc'ns LLC v. Retail Store Ventures, Inc.*, No. 12-02067, 2013 WL 4039378, at *2 (E.D.N.Y. Aug. 7, 2013) (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)) (citing *O'Callahan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007); *U.S. v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006)).

### B.    Unpaid Contributions

ERISA provides that an employer is obligated to make contributions to multiemployer benefit plans under a collective bargaining agreement in accordance with the agreement's terms. *Gesualdi v. Seacost Petrol. Prods., Inc.*, 97 F. Supp. 3d 87, 96 (E.D.N.Y. 2015) (citing 29 U.S.C. § 1145); *see LaBarbera v. J.D. Collyer Equip. Corp.*, 337 F.3d 132, 134 (2d Cir. 2003); 29 U.S.C. § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.")

If an employer is non-compliant, ERISA provides for statutory damages as follows:

> (A) the unpaid contributions;
> (B) interest on the unpaid contributions;
> (C) an amount equal to the great off—
> > (i)  interest on the unpaid contributions or
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A);

8

(D) reasonable attorney's fees and costs of the action, to be paid by the
defendant; and

(E) such other legal or equitable relief as the court deems appropriate.

*Gesualdi*, 97 F. Supp. 3d at 97 (quoting 29 U.S.C. § 1132(g)).

### C.      Withdrawal Liability

"Withdrawal liability is part of a comprehensive legislative scheme designed to address

the adverse consequences that arise when individual employers terminate their participation in,

or withdraw from, multiemployer pension plans." *Id.* at 97 (quoting *Burke v. Hamilton Equip.*

*Installers, Inc.*, 02–CV–519, 2006 WL 3831380, at *4 (W.D.N.Y. Oct. 16, 2006)).  Pursuant to

29 U.S.C.  § 1381, in the event an employer completely or partially withdraws from a pension

plan, the employer is liable to the plan for withdrawal liability "in order to protect any future

benefits that may have vested for employees covered by the plan." *Rao v. Prest Metals*, 149 F.

Supp. 2d 1, 5 (E.D.N.Y. 2001); *Finkel*, 2016 WL 4742279, at *5; *see* 29 U.S.C. § 1381.

Relevant to the instant case, a complete withdrawal occurs where an employer: (1) "permanently

ceases to have an obligation to contribute under the plan"; or (2) "permanently ceases all covered

operations under the plan."  29 U.S.C. § 1383(a); *see Rao*, 149 F. Supp. 2d at 5; *Finkel*, 2016

WL 4742279, at *5; *Seacoast Petroleum Prods., Inc.*, 97 F. Supp. 3d at 97.

Following an employer's withdrawal from a plan, "the fund is vested with authority to

determine the amount of withdrawal liability.  It must then notify the withdrawing employer of

its withdrawal liability, set a payment schedule, and formally demand payment." *Seacoast*

*Petroleum Prods., Inc.*, 97 F. Supp. 3d at 97; *Rao*, 149 F. Supp. 2d at 5; *Finkel*, 2016 WL

4742279, at *5 ("[U]pon withdrawal from the pension plan, the plan's sponsor must determine

the amount of the withdrawal liability and notify the withdrawing employer of that amount and

provide an amortized payment schedule."); *see* 29 U.S.C. §§ 1382, 1399(b).  The initial

notification to the employer must occur "as soon as practicable after an employer's complete or

9

partial withdrawal." 29 U.S.C. § 1399(b)(1); *see Rao*, 149 F. Supp. 2d at 5.  Within 90 days after the employer receives the notification from the plan sponsor, the employer can request that the plan sponsor:  (1) "review any specific matter relating to the determination of the employer's liability and the schedule of payments;" (2) "identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer;" and (3) "furnish any additional relevant information to the plan sponsor." 29 U.S.C. § 1399(b)(2)(A).  After receiving the employer's request for review, the plan sponsor is required to notify the employer of the plan's decision, identify the basis for the decision and explain the reason for "any change in the determination of the employer's liability or schedule of liability payments." *Id*. § 1399(b)(2)(B).

Importantly, notwithstanding an employer's request for review of the plan's withdrawal liability determination, "[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand." 29 U.S.C. § 1399(c)(2); *see Seacoast Petroleum Prods., Inc.*, 97 F. Supp. 3d at 97; *Finkel*, 2016 WL 4742279, at *6; *see also* 29 U.S.C. § 1401(d) (mandating that withdrawal liability payments continue notwithstanding the pendency of an arbitration and must continue unabated until "the arbitrator issues a final decision").  Indeed, "[t]o withhold the periodic payments required by the MPPAA pending a disposition of defendant's arguments on the merits would frustrate the clear congressional intent behind the requirement of interim payments." *Bowers for & on Behalf of NYSA-ILA Pension Trust Fund v. Transportes Navieros Ecuadorianos (Transnave)*, 719 F. Supp. 166, 173 (S.D.N.Y. 1989).  As such, "[b]y requiring payment pending appeal, the MPPAA effectuates the avowed purpose of shifting the economic burdens of withdrawal back to the withdrawing employer." *Id*. at 173-74; *see Rao*, 149 F. Supp. 2d at 5 (recognizing that ERISA is a "pay-first-question-later statute in that the employer must make withdrawal liability

10

payments regardless of whether there is a dispute as to the assessment of liability" (citation

omitted)).  In the event the employer fails to remit the required withdrawal liability payments

pursuant to the schedule set forth by the plan sponsor, the plan sponsor again notifies the

employer of the delinquency and the employer, in turn, has 60 days from the date of receipt of

the notification to cure the deficiency.  29 U.S.C. § 1399(c)(5)(B); *see Seacoast Petroleum

Prods., Inc.*, 97 F. Supp. 3d at 97-98; *Finkel*, 2016 WL 4742279, at *6.

      Where an employer has availed itself of the review and appeal procedures set forth in

29 U.S.C. § 1399(b) concerning the plan sponsor's withdrawal liability determination, any

disputes that still remain must be submitted to and resolved through arbitration.  29 U.S.C. §

1401(a)(1); *see Finkel*, 2016 WL 4742279, at *6; *Trustees of Local 531 Pension Fund v.

Flexwrap Corp.*,  818 F. Supp. 2d 585, 589 (E.D.N.Y. 2011) ("Any dispute over the plan's

calculation of withdrawal liability must be settled through arbitration . . . .").  Either party may

initiate arbitration within 60 days after the earlier of:  (1) "the date of notification to the

employer under section 1399(b)(2)(B);" or (2) 120 days after the date of the employer's request

under section 1399(b)(2)(A) of this title." *Id*.; *Finkel*, 2016 WL 4742279, at *6; *Rao*, 149 F.

Supp. 2d at 6.  In addition, [t]he parties may jointly initiate arbitration within the 180-day period

after the date of the plan sponsor's demand." *Id*.  Where an employer "fails to request arbitration

within the statutory time frame, it is barred from challenging the amount of withdrawal liability

calculated by the plan." *Flexwrap Corp.*, 818 F. Supp. 2d at 589 (citing 29 U.S.C. § 1401);

*Labarbera v. United Crane & Rigging Servs.*, 08–CV–3274, 2011 WL 1303146, at *5,

(E.D.N.Y. Mar. 2, 2011) ("[A]n employer's failure to arbitrate or dispute the plan sponsor's

calculation in the face of proper notification will result in the court's adoption of the sum

proffered by the plan, even in the absence of documentation as to how the figure was calculated.").

Moreover, in the event an employer is found to be in default,[1] the plan sponsor is vested with a potent weapon in that it "may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5); *Flexwrap Corp.*, 818 F. Supp. 2d at 589; *Nat'l Pension Plan of the Unite Here Works Pension Fund v. Swan Finishing Co.*, No. 05 Civ. 6819, 2006 WL 1292780, at *3 (S.D.N.Y. May 11, 2006); *Nat'l Pension Plan of the Unite Here Works Pension Fund v. Westchester Lace & Textiles, Inc.*, No. 05 Civ. 6138, 2006 WL 2051107, at *9 (S.D.N.Y. Jul. 21, 2006); *see also* 29 C.F.R. § 4219.33 (permitting plan to adopt additional rules "pertaining to acceleration of the outstanding balance on default").

## IV.   DISCUSSION

### A.   Liability

The question for the Court is whether Plaintiffs' allegations is whether the factual allegations set forth in the Complaint, if accepted as true, establish the Defendants' liability for the claims. *See Trustees of Pavers and Road Builders District Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. Triple H Concrete Corp.*, 15 Civ. 6687, 2018 WL 1178036, at *6 (E.D.N.Y. Feb. 16, 2018) (citing *James v. Arango*, No. 05 Civ 2593, 2011 WL 1627099 (E.D.N.Y. Apr. 27, 2011)). "On a motion for a default judgment,

---

[1]   A "default" is defined under ERISA as "the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." 29 U.S.C. § 1399(c)(5)(A), (B).

the burden is on the plaintiff to establish an entitlement to recovery, and a failure to plead sufficient facts may require the denial of the motion." *Triple H Concrete Corp.*, 2018 WL 1178036, at *6. Plaintiffs claim Broadway Electric's liability stems from: (1) their failures to pay contributions to both the Pension Fund and Health Fund under the CBA and ERISA; and (2) their complete withdrawal from the Pension Fund. On a motion for default judgment, "factual allegations in the complaint that a defendant failed to comply with the payment rules established by the provisions of a CBA and any applicable contracts are sufficient to establish an ERISA violation." *Id.*; *Trustees of Local 813 Ins. Tr. Fund v. Bradley Funeral Serv., Inc.*, No. 11 Civ. 2885, 2012 WL 3871759, at *3 (E.D.N.Y. Aug. 10, 2012), *report and recommendation adopted,* 2012 WL 3871755 (E.D.N.Y. Sept. 4, 2012).

### 1.      *Unpaid Benefits Contributions*

The "Agreement and Declaration of Trust for the United Employees Health Plans" (the "Health Fund Trust Agreement") created the Health Fund [DE 15-3] and the "Agreement and Declaration of Trust Local 1922 Pension Fund" (the "Pension Fund Trust Agreement") created the Pension Fund [DE 15-4]. Regarding employer contributions, both of the Trust Fund Agreements incorporate "the applicable written agreements in effect from time to time between the Employer or its bargaining representative and the Union." DE 15-3 at 18; *see* DE 15-4 at 11. During the time period at issue, June 2016 through January 2017, Broadway Electric and the Union were bound by the CBA dated August 1, 2014 which was effective from that date through July 31, 2017. CBA at 2. The CBA requires Broadway Electric to make contributions for eligible employee towards the Health Fund and the Pension Fund at specific rates. *Id.* at 10-11. The Complaint alleges that Broadway Electric did not make contributions in the amounts of $1,766.40 towards the Pension Fund and $8,859.34 towards the Health Fund as

13

required by the CBA.  Compl. ¶¶ 11, 23.  Accordingly, Plaintiffs' allegations and supporting documentation demonstrate that Broadway Electric is an employer within the meaning of ERISA, that it was bound by a CBA, and that it failed to make the required contributions to both the Pension and Health Funds.  *See Gesualdi*, 97 F. Supp. 3d at 99.  The factual allegations in the Complaint are therefore sufficient to establish liability under ERISA.

However, the Court finds that Plaintiffs have pleaded no allegations which would warrant the imposition of individual liability against Ray.   "A number of cases in this circuit have addressed the issue of individual liability, noting that although federal law governs disputes arising under ERISA, New York state law applies in determining whether a collective bargaining agreement imposes personal liability on a signatory to the agreement."  *Flanagan v. M.N.T. Dev. Corp.*, No. CV 09-1250, at 2011 WL 6955892, at *2 (E.D.N.Y. Dec. 13, 2011) (citing *Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Phillip Gen. Constr.*, No. 05 CV 1665, 2007 WL 3124612, at *6 (E.D.N.Y. Oct. 23, 2007)).  "Based on its analysis of New York law, the Second Circuit has held that, where liability is based on a signed CBA, there must be 'clear and explicit evidence' that an individual intended to be held personally liable for the liability of a corporation when he signed the CBA."  *Id.* at *2 (quoting *Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Manhattan Plumbing Corp.*, No. 08 CV 3036, 2009 WL 5821676, at *6 (E.D.N.Y. Oct. 8, 2009)).  Where, as here, the copy of the CBA provided to the Court was not signed by the individual defendant, *see* CBA at 14, Plaintiffs have not met their burden to demonstrate "overwhelming evidence of the signatory's intention to assume personal liability."  *Flanagan v. NPORT Constr. Corp.*, No. CV 08-4540, 2013 WL 702490, at *3 (E.D.N.Y. Jan. 8, 2013) (quoting *M.N.T. Dev. Corp.*, 2011 WL 6955892, at *2).  As such, the Court will only examine Broadway Electric's liability to Plaintiffs.

14

### 2.   *Withdrawal Liability*

Following Broadway Electric's failure to make contributions to both Funds, Plaintiffs allege that Broadway Electric withdrew from the Pension Fund in a "complete withdrawal" by ceasing all covered operations under the Pension Fund in February 2017 and that Broadway Electric's withdrawal liability totals $18,299.00.  Compl. ¶¶ 12-14.  Plaintiffs provided the Court with a letter from an actuary dated September 27, 2018 reflecting this amount.  *See* Actuary Letter [DE 15-5].  On November 19, 2018, Plaintiffs notified Broadway Electric of its withdrawal liability obligation by sending a demand letter.  Compl. ¶ 15.  The Complaint alleges that Plaintiffs offered a payment schedule to Broadway Electric which provided for "quarterly payments to the Pension Fund in December, March, June and September of each year in the amount of $621.00 commencing on or before December 1, 2018, with a final payment of $564.00 due on March 1, 2022."  *Id.* ¶ 14.  This payment schedule is consistent with the schedule provided in the letter from Plaintiffs' actuary.  According to the Complaint, the first demand letter advised Broadway Electric that its failure to cure its default would result in the acceleration of the full amount of withdrawal liability.  Compl. ¶ 15.  If Broadway Electric did not make a payment "within sixty (60) days of the date the first quarterly payment was due then [the] amount owed would be in default and the entire amount of withdrawal liability, plus accrued interest on total outstanding liability, from the due date of the first payment that was not timely made would become due."  *Id.*  Plaintiffs then sent Broadway Electric a second demand letter which requested payment for their withdrawal liability on January 2, 2019, to which Broadway Electric did not respond.  *Id.* ¶ 17; *see* Minutes of Trustees Meeting Held on April 9, 2019 [DE 15-2] at 5.  Moreover, there are no allegations that Broadway Electric has ever cured its default or responded to either of Plaintiffs' demand letters.  Consequently, this means that

15

Broadway Electric has never asked Plaintiffs to review the withdrawal liability determination or payment schedule. Further, there are no allegations that Broadway Electric ever initiated an arbitration proceeding to resolve any disputes it may have with Plaintiffs' determinations. Based upon these facts, the Court finds that Plaintiffs have demonstrated the statutory prerequisites under 29 U.S.C. § 1399(b) and have shown that Broadway Electric is liable for the withdrawal liability determined by Plaintiffs. *See Demopoulos v. Sweet Clover Farms Inc.*, No. 17 CV 7257, 2019 WL 6619352, at *3 (E.D.N.Y. Oct. 29, 2019); *Div. 1181 Amalgamated Transit Union— New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 609 (E.D.N.Y. 2017); *Gesualdi*, 97 F. Supp. 3d at 99.

### B. Default Judgment

#### 1. Willfulness

When a defendant is continually and "entirely unresponsive," a defendant's failure to respond is considered willful. *Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. JREM Constr. Corp.*, No. 12 Civ. 3877, 2013 WL 618738 at *3 (E.D.N.Y. Jan. 28, 2013); *Bridge Oil Ltd. v. Emerald Reefer Lines*, LLC, No. 06 Civ. 14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008).

Thus, as to this factor, the failure of Broadway Electric to respond to the Complaint, under the present facts, sufficiently demonstrates willfulness. *See Elgard Corp. v. Brennan Const. Co.*, 248 Fed. App'x 220, 222 (2d Cir. 2007); *Eastern Sav. Bank, FSB v. Beach,* No. 13 Civ. 341, 2014 WL 923151, at *5 (E.D.N.Y Feb. 12, 2014), *adopted by* 2014 WL 923151 (E.D.N.Y. Mar. 10, 2014); *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007). Plaintiffs submitted affidavits of service which demonstrate that Broadway Electric and Ray were both served with the Summons and

Complaint.  DE 7, 8.  Neither defendant answered or responded in any way to the Complaint nor

either move for an extension of time to do so.  In addition, Plaintiffs provided the Court with

proofs of service which indicate Defendants were served with the motion for default judgment

[DE 11-4], this Court's December 30, 2019 Order [DE 14], and Plaintiffs' additional

documentation in response to the December 2019 Order [DE 15-9].  The Court notes that

Plaintiffs submitted a supplemental affidavit of service on January 22, 2020 which reflects the

fact that the copy of Plaintiffs' additional documentation [DE 15] which was mailed to

Broadway Electric was returned to Plaintiffs' counsel.  However, the service upon Ray, "who is

listed as Chief Executive Officer," was not returned.  *See* DE 16.  Despite this fact, Plaintiffs

have undertaken sufficient efforts to ensure that Defendants had notice of these proceedings.

Therefore, the Court finds Defendants' failures to respond to the Complaint and instant motion

were deliberate.  *See Div. 1181 Amalgamated*, 270 F. Supp. 3d 593 at 611-12; *see also Danial v.*

*Langenbach*, No. 12 CV 2983, 2014 WL 5169389, at *7 (S.D.N.Y. Oct. 14, 2014)

(recommending entry of default judgment despite mailings to defendants sent by the court and

plaintiffs were returned because "the efforts so far undertaken have been sufficient to ensure

defendants' knowledge of the proceedings").

### 2. *Meritorious Defense*

Where an employer fails to request arbitration within the timeframes set forth by ERISA,

that employer is precluded "from asserting defenses to Plaintiff['s] claims of withdrawal

liability."  *Seacoast Petroleum Prod., Inc.*, 97 F. Supp. 3d at 100; *see Trs. of the 1199 SEIU*

*Health Care Employees Pension Fund v. Traymore Chemists, Inc.,*13 CV 4070, 2014 WL

4207589, at *4 (E.D.N.Y. June 25, 2014), *report and recommendation adopted by* 2014 WL

4207592 (E.D.N.Y. Aug. 25, 2014) (recognizing that "if no arbitration is initiated, the employer

'waives its right to arbitration and its right to assert any defenses in [an] action seeking withdrawal liability.'") (quoting *Bakery & Confectionary Union & Industrial Pension Fund v. Mt. Rose Ravioli & Macaroni Co., Inc.,* 2011 WL 6130975, at *2 (E.D.N.Y. Nov. 10, 2011)); *Vacca*, 2008 WL 4426875 at *7 ("It is well-settled that when a defendant fails to initiate arbitration under ERISA's provisions, the defendant's withdrawal liability becomes fixed and all defenses to that withdrawal liability are waived.").  Moreover, as stated previously, where an employer "fails to request arbitration within the statutory time frame, it is barred from challenging the amount of withdrawal liability calculated by the plan." *Flexwrap Corp.*, 818 F. Supp. 2d at 589 (citing 29 U.S.C. § 1401); *Labarbera*, 2011 WL 1303146, at *5 ("[A]n employer's failure to arbitrate or dispute the plan sponsor's calculation in the face of proper notification will result in the court's adoption of the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated." (citations omitted)); *see Gesualdi v. Auburndale Mason Supply, Inc.*, No. 16 CV 2636, 2017 WL 3208597, at *3 (E.D.N.Y. June 30, 2017), *report and recommendation adopted*, 2017 WL 3208530 (E.D.N.Y. July 26, 2017).

As noted above, there is no evidence that Defendants timely sought arbitration within ERISA's statutory timeframes, and, as a result, Defendants are precluded from asserting defenses to Plaintiffs' claims of withdrawal liability here. *See Pavers & Rd. Builders Dist. Council Pension Fund by Montelle v. Nico Asphalt Paving, Inc.*, No. 15 CV 3994, 2017 WL 1403339, at *4 (E.D.N.Y. Mar. 31, 2017) ("In failing to properly initiate arbitration or to initiate any action challenging the Fund's calculation of withdrawal liability within the statutorily prescribed time period, Nico has thus waived its right to raise a laches defense in this forum."); *Mt. Rose Ravioli & Macaroni Co, Inc.*, 2011 WL 6130975, at *3 ("Where a defendant does not initiate arbitration,

it waives its right to arbitration and its right to assert any defenses in [an] action seeking withdrawal liability.  Accordingly, the withdrawal liability assessed against the defendant becomes fixed.") (internal citation omitted).  Therefore, to the extent Broadway Electric may have had meritorious defenses to Plaintiffs' claims, such defenses have been implicitly waived based upon Broadway Electric's failure to timely request arbitration.  *See Gesualdi v. Reliance Trucking of CG Inc.*, No. 14-CV-4112, 2015 WL 1611313, at *10 (E.D.N.Y. Apr. 10, 2015) ("Defendant's failure to seek timely arbitration under ERISA precludes it from asserting defenses to Plaintiffs' claims of withdrawal liability here."); *Trustees of Leather Goods, Plastics, Handbags & Novelty Workers Union Local 1 Joint Ret. Fund v. Key Handling Sys. Inc.*, No. CV 14-2675, 2015 WL 5604184, at *4 (E.D.N.Y. June 5, 2015), *report and recommendation adopted*, 2015 WL 5604178 (E.D.N.Y. Sept. 23, 2015) (same).  Even if Broadway Electric had not waived its right to assert defenses to its alleged withdrawal liability, "the Court would nevertheless be unable to determine whether Defendant had a meritorious defense to any of Plaintiffs' claims, whether for unpaid contributions or withdrawal liability."  *Gesualdi*, 97 F. Supp. 3d at 100.  This conclusion is based on the fact that Broadway Electric did not answer or respond to the Complaint and did not oppose the instant motion for default judgment. *See id.*

### 3.     **Prejudice**

The last factor for the Court to consider is whether the non-defaulting party would be prejudiced if the motion for default judgment were to be denied.  Denying this motion would be prejudicial to Plaintiffs "as there are no additional steps available to secure relief in this Court." *See Trs. of the Pavers and Road Builders*, 2013 WL 61873, at *4 (internal quotation marks omitted); *Bridge Oil Ltd.*, 2008 WL 5560868, at *2 (citing *Mason Tenders*, 2003 WL 1960584, at *3).  If a default judgment is not granted, Plaintiffs will have no alternative legal redress to

recover the delinquent contributions or withdrawal liability.  Since all three factors necessary to establish a default have been satisfied, the Court respectfully recommends to Judge Seybert that default judgment be entered against Broadway Electric.

### C.    Damages and Requested Relief

Although a party's default is viewed as "a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); Fed. R. Civ. P. 8(d)). Therefore, once a party's default as to liability is established, a plaintiff still must prove damages.  *See Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. and Training Fund and Other Funds v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing Fed. R. Civ. P. 55(b)(2); *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *see also Flaks*, 504 F.2d at 707 ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.").  The only question remaining then is whether Plaintiffs have provided adequate support for the damages sought. *See Gutman v. Klein*, No. 03-1750, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) ("The burden of proof rests with the plaintiffs." (citing *Greyhound*, 973 F.2d at 158)).

### 1.    *Unpaid Benefit Contributions*

Plaintiffs seek to recover $1,766.40 in unpaid Pension Fund contributions and $8,859.34 in unpaid Health Fund contributions.  *See* Statement of Damages [DE 11-2].  The Complaint does not contain any details as to how these amounts were determined.  Regarding the unpaid contributions to the Pension Fund, the Complaint alleges only that "[t]he Employer failed to pay . . . the appropriate contributions from June 2016 through January 2017 in the amount of

$1,766.40." Compl. ¶ 11.  Likewise, with respect to the unpaid contributions to the Health Fund,

the Complaint simply states "[t]he Employer failed to make contributions to the Health Fund

from June 2016 through January 2017, in the amount of $8,859.34."  *Id.* ¶ 23.  Attached to the

motion for default judgment is the "Affirmation in Support of Motion for Default Judgment" by

Plaintiffs' counsel, Sheri Preece.  Preece Aff. I.  Attorney Preece's affirmation contains

statements similar to those in the Complaint, which provide only the respective unpaid amounts

and no information explaining the underlying calculations.  *Id.* ¶¶ 7, 14.

      Although the Court ordered Plaintiffs to submit a copy of the audit performed which

shows the total amount of unpaid contributions and withdrawal liability as calculated by the

auditors, the evidence demonstrates that an audit was only performed regarding withdrawal

liability.  *See* DE 15-5.  As stated in Plaintiffs' cover letter for its supplemental documentation in

response to this Court's Order, Plaintiffs point out that "Exhibit 5" [DE 15-5] represents

"calculations of the contributions owed as well as withdrawal liability."  *See* DE 15.  The first

page of Exhibit 5, a 19-page filing, is a table which lists monies owed by Broadway Electric

during the months at issue for its unpaid contributions to the Health Fund and Pension Fund,

with the amounts of interest owed for each month's delinquent contributions.  DE 15-5.  The

Court does not know who created this table because it not signed or dated.  *See id.* at 1.

Plaintiffs have also submitted an earnings report for an employee for June 2016 through January

2017, *id.* at 3, and monthly "invoices" during this same time period from the Union for this same

employee which contain the amounts owed to the Pension and Health Funds for that employee,

*id.* at 4-19.  The sum of the amounts for contributions to both Funds as set forth in the invoices

match Plaintiffs' requested damages.  *Id.* at 4-19.  Accordingly, Plaintiffs have submitted

sufficient support for awards of $1,766.40 in unpaid Pension Fund contributions and $8,859.34

in unpaid Health Fund contributions.  *See Sciascia v. Prime Protective Servs., Inc.*, No 13-cv-0800, 2014 WL 940721, at *7 (E.D.N.Y. Mar. 11, 2014) (finding plaintiffs sufficiently proved damages for unpaid contributions based on the submission of remittance reports).

### 2.    *Interest on Unpaid Contributions*

Under ERISA, plaintiffs are "entitled to interest on unpaid contributions at 'the rate provided under the plan, or if none, the rate prescribed under section 6621 of Title 26.'" *Sciascia,* 2014 WL 940721, at *7 (quoting *Cement & Concrete Workers Dist. Council Welfare Fund,* 06–CV–2953, 2007 WL 2712314, at *3, n. 4 (E.D.N.Y. Sept.13, 2007)).

According to the Statement of Damages, Plaintiffs seek $864.12 in interest on the unpaid Pension Fund contributions and $4,316.04 in interest on the unpaid Health Fund contributions. DE 11-2.  With respect to the Pension Fund, the Pension Fund Trust Agreement provides that "[a]n employer who does not make the required contributions promptly when due shall be obligated to pay interest on the monies due (in amounts established by the Trustees in the Schedule attached hereto) from the date when the payment was due to the date when payment is made."  DE 15-4 at 12.  The "Schedule" referenced in the Pension Fund Trust Agreement was not submitted by Plaintiffs and the CBA is silent regarding the applicable interest rate.  *See* CBA at 11-12.  Despite this, Attorney Preece affirmed that "[t]he interest rate approved by the Trustees for the Pension Fund is one and a half percent (1.5%) monthly or eighteen percent (18%) annually on delinquent contributions."  Preece Aff. I., at ¶ 8.  As to the Health Fund, the Health Fund Trust Agreement provides that "an Employer who does not make the required contributions promptly when due may be obligated to pay interest on the monies due up to the maximum permitted by law from the date payment was due to the date payment is made."  DE 15-3 at 19.  Neither the CBA nor Attorney Preece's affirmation specifically addresses the

interest rate which applies to delinquent Health Fund contributions.  In addition, Plaintiffs' table does not show any of the underlying calculations utilized to determine the amount of interest that accrued for each month's unpaid contributions to both Funds—the table simply shows the amounts they believe are due and owing to them with "rate 18%" at the top, which is not helpful to the Court.

In light of this circumstance, the Court was unable to reconstruct Plaintiffs' calculations and recommends that Plaintiffs be afforded an opportunity to explain the method by which they determined the amounts of interest they claim they are owed.  *Trs. Of the Local 7 Tile Indus. Welfare Fund v. EAQ Const. Corp.*, No. 14 CV 4097 (SJ) (CLP), 2015 WL 5793597, at *11 (E.D.N.Y. Sept. 30, 2015) (providing plaintiffs an opportunity to submit supplemental papers interest calculation because "plaintiffs' submissions' do not contain sufficient information for the Court to determine how plaintiffs arrived at this figure, nor has the Court been able to duplicate plaintiffs' calculations to confirm that the amount of interest requested is accurate, even with respect to the damages for delinquent contributions that plaintiffs sought to recover").  In doing so, Plaintiffs should provide the "Schedule" referred to in the Pension Trust Fund Agreement. Based on Plaintiffs' table, it also appears that Plaintiffs calculated the interest owed on the unpaid Health Fund contributions at the same rate as those for the Pension Fund.  Plaintiffs should also provide further documentation, if there is any, regarding the applicable interest rate for the unpaid Health Fund contributions.  If there is none, Plaintiffs should calculate such interest utilizing the interest rate provided in 26 U.S.C. § 6621.  *See Drywall Tapers & Pointers of Greater New York Local Union 1974, IUPAT, AFL-CIO v. Pulco, Inc.*, No. 18-CV-4608 (AJN), 2019 WL 4733597, at *2 (S.D.N.Y. Sept. 27, 2019) ("The Union is also entitled to 'interest on the unpaid contributions' pursuant to 29 U.S.C. § 1132(g)(2)(B). As the Union points

to no provision specifying a rate under the plan, under § 1132(g), the Union is entitled to interest at the rate prescribed by 26 U.S.C. § 6621.").

### 3.    *Liquidated Damages on Unpaid Benefit Contributions*

Pursuant to 29 U.S.C. § 1132(g)(2)(C), plaintiffs in an ERISA case are entitled to "an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent." 29 U.S.C. § 1132(g)(2)(C). Plaintiffs seek $864.12 in liquidated damages for the unpaid Pension Fund contributions and $4,665.25 for the unpaid Health Fund Contributions. Once again, Plaintiffs have provided no information as to how they arrived at these calculations. The relevant Trust Agreements for both the Pension and Health Funds provide for liquidated damages as a result of delinquent contributions, but both agreements are silent as to how liquidated damages are to be calculated. *See* Health Fund Agreement at 12; Pension Fund Agreement at 13. However, the Court notes that these requested amounts for liquidated damages match the amounts Plaintiffs requested for interest on the unpaid contributions; therefore, it appears to the Court that Plaintiffs calculated liquidated damages pursuant to 29 U.S.C. § 1132(g)(2)(C)(i). This method seemingly coincides with cases which have held that "[w]here a CBA is silent with respect to the calculation of liquidated damages, the plaintiffs should be awarded liquidated damages in an amount equal to the amount of interest awarded." *King v. STL Consulting, LLC*, No. 05 CV 2719 (SJ), 2006 WL 3335115, at *6 (E.D.N.Y. Oct. 3, 2006) (citing *Trs. of the Nat'l Org. of Indus. Trade Unions Ins. Trust Fund v. Davis Grande Co.,* 03-CV-6229, 2006 WL 1652642 at *4 (E.D.N.Y. June 9, 2006)). Because Plaintiffs did not submit sufficient evidence regarding their entitlement to interest, and for the reasons set forth above, the Court is likewise unable to determine the appropriate amount of liquidated damages at this juncture.

###### 4.        *Delinquent Withdrawal Liability*

Plaintiffs' submissions summarily assert withdrawal liability in the amount of

$18,299.00, but do not explain how that figure was calculated.  Although this number is set forth

by Plaintiffs' actuary in a one-page letter, aside from the unsworn assertion that the actuary

"utilized the second alternative to the presumptive method (the rolling five year method) and the

applicable de minimis rule was applied," there is no detail as to how the actuary actually

calculated withdrawal liability.  *See Labarbera v. Utd. Crane & Rigging Servs., Inc.*, Nos. 08–

CV–3274, 08-CV-3983, 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011).  However, "[t]he

law is unforgiving where, as here, an employer fails to take action in a timely manner after being

notified."  *Id.* (citing *Amalgamated Lithographers of America v. Unz & Co. Inc.*, 670 F.Supp.2d

214, 222 (S.D.N.Y.2009)).

> Any dispute concerning the plan's assessment of liability had to be
> settled through arbitration, and an employer's failure to arbitrate or
> dispute the plan sponsor's calculation in the face of proper
> notification will result in the court's adoption of the sum proffered
> by the plan, even in the absence of documentation as to how the
> figure was calculated.

*Id.* (citing *Daniello v. Planned Sys. Integration Ltd.*, 2009 WL 2160536, at *5 (E.D.N.Y. July 17,

2009)).  Despite Plaintiffs' lack of evidence regarding its calculation for withdrawal liability, the

Court adopts the sum of $18,299.00.  *See id.*; *Daniello*, 2009 WL 2160536, at *5 ("The absence

of any detail as to how the Fund's actuary calculated withdrawal liability—aside from the

unsworn assertion that the Fund uses the "presumptive method" under ERISA—is regrettable

because the court is deprived of a meaningful opportunity to substantiate the amount of

withdrawal liability that the plaintiffs claim.  Nonetheless, the submissions made by the plaintiffs

are statutorily sufficient to permit an award of the damages they seek."); *see also Daniello v.*

*PML Furniture Grp. Of NJ, Ltd.*, No. 06-CV-5261, 2009 WL 4722650, at *4 (E.D.N.Y. Dec. 9,

2009) ("Since [the defendant] failed to arbitrate this matter, I assume that all sums used to calculate withdrawal liability are correct."); *Bd. of Trustees of the UFCW Local 174 Pension Fund v. Jerry WWHS Co.*, No. 08-CV-2325, 2009 WL 982424, at *4 (E.D.N.Y. Apr. 10, 2009) ("Although the record plainly does not suffice to support the calculation on which the Trustees rely—for example, that calculation assumes a specific amount as the unfunded value of vested benefits, but provides no documentary support for that assumption—that lapse is of no moment. [Defendant's] liability arises from its failure to respond to the earlier demands that the Trustees sent; as a result of that failure, the amount of withdrawal liability that the Trustees demanded became due and owing as a matter of law." (citations omitted))).

   **5.    *Interest and Liquidated Damages for Delinquent Withdrawal Liability***

   Plaintiffs seek the sum of $4,666.25 for both interest and liquidated damages based on withdrawal liability from the Pension Fund only.  However, these requests are unsubstantiated for the same reasons Plaintiffs' requests for interest and liquidated damages for the unpaid contributions are.  It appears that an annual interest rate of 18% was used according to Plaintiffs' table, as was the case for the unpaid contributions, but because proof of this rate is lacking in Plaintiffs' submissions, the Court will defer its determination on interest for withdrawal liability until such documentation is provided.  If Plaintiffs are unable to provide proof regarding the 18% annual interest rate, Plaintiffs should calculate interest based on the applicable regulation that provides for interest on withdrawal liability, namely, 29 C.F.R. § 4219(b), (d).  *Jerry WWHS Co.*, 2009 WL 982424, at *5 ("Because the record does not include any information about the terms of the Fund, the court may look only to the regulatory interest rate in computing interest." (citing 29 C.F.R. § 4219(b), (d))).  Then, after the Court determines the applicable interest rate

for the withdrawal liability, the Court will be able to calculate liquidated damages pursuant to 29 U.S.C. § 1132(g)(2)(C).

### 6.    *Attorney's Fees*

Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  Both the Second Circuit and the Supreme Court "have held that the lodestar method — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 183 (2d Cir. 2007)). The Court should determine the "presumptively reasonable fee" by looking to "what a reasonable client would be willing to pay."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 183-84 (2d Cir. 2008). "[W]hether the calculation is referred to as the lodestar or the presumptively reasonable fee, courts will take into account case-specific factors to help determine the reasonableness of the hourly rates and the number of hours expended."  *Pinzon v. Paul Lent Mech. Sys.,* No. 11–CV–3384, 2012 WL 4174725, at *5 (E.D.N.Y. Aug. 21, 2012), *report and recommendation adopted by* 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012).  These factors include:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill,* 522 F.3d at 184.  "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged."  *Finkel v. Omega Comm'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

According to the Statement of Damages, Plaintiffs request $2,080.00 in attorney's fees. DE 11-2.  However, the Court notes that the invoice Plaintiffs' counsel submitted reflects a total account balance of $4,191.20, which includes a combined amount in costs for filing and service fees.  DE 15-6 at 2.  The affirmation of Plaintiffs' counsel in support of fees likewise notes that her firm has spent $4,191.20.  Preece Aff. II ¶ 7.  In reviewing the firm's invoice, the Court is deducting the following entries – *i.e.*, paralegal-type tasks charged at attorney rate of $325.00 per hour -- which are mixed in among the entries for attorney hours worked:  "Index Number Fee ($400);" "Process Server Fee ($182.50);" "Filing Affidavit of Service ($32.50);" "Mailing of Default Motion ($63.40);" "Mailing of Judge's Order" ($51.55)."  Deducting the total of $729.95 for these tasks yields a balance of $3461.25 for 10.65 hours of work and results in an hourly rate of $325 – the rate Plaintiffs are seeking.

Prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour.  *See Incredible Foods Grp., LLC v. Unifoods, S.A. De C.V.*, No. 14-CV-5207, 2016 WL 4179943, at *3 (E.D.N.Y. Aug. 5, 2016); *Valdez v. H & S Rest. Operations, Inc.*, No. 14 CV 4701, 2016 WL 3079028, at *8 (E.D.N.Y. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016); *OneWest Bank, N.A. v. Denham* No. CV 14-5529, 2015 WL 5562980, at *12 (E.D.N.Y. Aug. 31, 2015), *adopted by* 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015); *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation Pension & Welfare Funds v. L&P Interiors, Inc.*, No.

CV 14-3316, 2015 WL 5562316, at *13 (E.D.N.Y. Aug. 14, 2015) *adopted by* 2015 WL 5562340 (E.D.N.Y. Sept. 18, 2015); *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09 Civ. 5251, 2014 WL 1514235, at *14 (E.D.N.Y. Apr. 16, 2014) (collecting cases).

Some "[c]ourts have recognized slightly higher ranges in this district of $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." *Small v. New York City Transit Auth.*, No. 09 Civ. 2139, 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014) (internal quotations omitted); *see Hormel Foods Sales, LLC v. Ship Side Food Serv., Inc.,* 16-CV-1595, 2018 WL 3202076, at *2 (E.D.N.Y. Mar. 23, 2018); *Nicaisse v. Stephens & Michaels Associates, Inc.*, No. CV 14-1570, 2016 WL 4367222, at *4 (E.D.N.Y. June 9, 2016), *report and recommendation adopted*, No. 14-CV-1570, 2016 WL 4275687 (E.D.N.Y. Aug. 12, 2016); *Brinkmeier v. Round Two Recovery, LLC*, No. CV 153693, 2016 WL 4384330, at *9 (E.D.N.Y. July 25, 2016), *report and recommendation adopted*, No. 15-CV-3693, 2016 WL 4384723 (E.D.N.Y. Aug. 16, 2016).

Although the Second Circuit has not recently revisited the issue of what constitutes a reasonable fee within this district since its discussion in *Konits v. Karahalis*, 409 Fed. App'x 418, 422–23 (2d Cir. 2011) (summary order) -- which affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour -- a number of district courts within this district continue to rely, in part, on *Konits* in determining the appropriate range of fees. *See Morales v. B&M Gen. Renovation Inc.*, No. 14 CV 7290M, 2016 WL 1266624, at *11 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016) (relying, in part, on *Konits* and finding that "the prevailing hourly rate for partners in this district is between $300 and $400); *Incredible Foods Grp., LLC*, 2016 WL 4179943, at *3 (same);

*Valdez*, 2016 WL 3079028, at *8 (same); *Litkofsky v. P & L Acquisitions, LLC*, No. CV 15 5429, 2016 WL 7167955, at *9 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted sub nom. Ira Litkofsky v. P & L Acquisitions LLS*, No. CV 15-5429, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) (same).

Plaintiffs here seek an hourly rate of $325 per hour for work performed by Attorney Preece, who appears to be the sole attorney who worked on this matter. Attorney Preece was admitted to practice in the State of New York in 2011 which means she had been in practice for at least eight years when this application was submitted. Preece Aff. II ¶ 3. She is admitted to practice in several federal courts and concentrates her practice in labor law and ERISA matters. In 2019, Attorney Preece became a partner in McCarthy and Preece PLLC. *Id.* ¶ 4. The Firm has always practiced in labor and employment law representing Unions, Pension Funds and Welfare Funds. *Id.* By Eastern District standards, the Court finds that an hourly rate of $350 exceeds the high end of the range for senior associates with Attorney Preece's experience. The Court is also cognizant that this is a default motion in an FLSA case, meaning no discovery and no motion practice – other than the current motion for default judgment – had to be undertaken. Given all of the circumstances, this Court respectfully recommends to Judge Seybert that Attorney Preece's hourly rate be reduced to $300 per hour. Multiplying the 10.6 hours entered in the firm's billing sheets by $300 per hour yields a total of $3,180. However, the Court points out that these findings are somewhat academic in light of the fact that Plaintiffs' counsel is requesting only $2,080 in attorney's fees. Since the fees requested are lower than those

calculated by the Court, the Court respectfully recommends that Plaintiffs' request for $2,080 be GRANTED.[2]

### 7.      Costs

Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *Sheet Metal Workers Nat'l Pension Fund v. Evans*, No. 12 Civ. 3049, 2014 WL 2600095, at \*11 (E.D.N.Y. June 11, 2014). However, it is incumbent upon the party seeking reimbursement of its costs to provide the court adequate substantiation in the form of receipts and other documents not only showing such costs were incurred, but that they were paid. *See Lee v. Santiago*, No. 12 CIV. 2558, 2013 WL 4830951, at \*5 (S.D.N.Y. Sept. 10, 2013) ("[I]t is . . . the requesting party's burden to support its application, and this means that the requested costs must be substantiated . . . A mere assertion that a certain cost was incurred, though, is insufficient, where such an assertion is made in a conclusory fashion in a brief or bill of costs, without a supporting affidavit, declaration, or documentation."); *Volpe v. Nassau Cty.*, No. 12 CV 2416, 2016 WL 6238525, at \*10 (E.D.N.Y. Oct. 24, 2016) ("The fee applicant bears the burden of adequately documenting and itemizing the costs requested." (internal quotation omitted)). In addition, Local Civil Rule 54.1 states that "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,' " and "[b]ills for the costs claimed must be attached as exhibits." *Id.* (quoting *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458, 2012 WL 5431034, at \*9 (S.D.N.Y. Oct. 16, 2012), *report & recommendation adopted sub nom.*

---

[2]      In light of this determination, the Court finds it unnecessary to address the fee calculation associated with the paralegal-type tasks referenced earlier.

*Roberts v. City of New York*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012)).  Generally, the only exception to this rule is where reimbursement is sought for a filing fee.  In such cases, a court may take judicial notice of the fact that the fee was paid by virtue of entries in the docket.  *See Douyon v. NY Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 352 (E.D.N.Y. 2014), *judgment entered sub nom. Douyon v. N.Y. Med. Health Care, P.C.*, No. CV 10-3983, 2015 WL 5821499 (E.D.N.Y. Sept. 30, 2015) ("The Court takes judicial notice of the $350 filing fee reflected on the docket."); *Lee v. Santiago*, No. 12 CIV. 2558, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("Court fees that are reflected on the Court's docket are sufficiently substantiated").

Here, Plaintiffs request $400.00 for the filing fee and $182.50 for a process server fee. With respect to the $400.00 filing fee, Plaintiffs have not provided a receipt but the Court takes judicial notice that the filing fee was paid.  *See* DE 1.  Thus, the Court finds that Plaintiffs are entitled to reimbursement of this expenditure.  *Douyon*, 49 F. Supp. 3d at 352.  Turning next to the $182.50 expense associated with service of process, the Court notes that Plaintiffs submitted receipts which demonstrate the payment of these fees for service of process on the New York Secretary of State.  DE 15-7.  As such, the Court finds these costs to be adequately substantiated and reasonable, and that Plaintiffs should be reimbursed for them.  *See Div. 1181 Amalgamated*, 270 F. Supp. 3d at 629 (citing *Fair v. United States*, No. 12-CV-6062, 2014 WL 2862658, at *2 (E.D.N.Y. June 23, 2014)).

## V.   CONCLUSION

For the foregoing reasons, this Court respectfully recommends to Judge Seybert that a default judgment be entered against Broadway Electric, but not against individual Defendant Ray.  The Court further recommends that Plaintiffs be awarded the following damages: $1,766.40 in unpaid contributions to the Pension Fund; $8,859.34 in unpaid contributions to the

32

Health Fund; $18,299.00 in withdrawal liability; $2,080 in attorney's fees; and $582.50 in costs, for a total of $31,587.24.  However, the Court recommends that Plaintiffs' requests for interest and liquidated damages be deferred at this time and that Plaintiffs be afforded the opportunity to submit additional information/proof of the annual interest rate utilized by the Plaintiffs in calculating interest and liquidated damages pursuant to the CBA and/or Trust documents or the alternative statutory rate as discussed in this Report and Recommendation.

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert.  Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


SO ORDERED:

Dated:  Central Islip, New York
        March 18, 2020

                                    /s/ A. Kathleen Tomlinson
                                    A. KATHLEEN TOMLINSON
                                    United States Magistrate Judge